IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

IN RE:  
                                                     In Proceedings  
                                                     Under Chapter 13  
GARY E. JONES  

                                                     Case No. 17-40497  
        Debtor(s).

## OPINION

The matter before this Court is the Chapter 13 Trustee's (Trustee) Objection to Confirmation of the Debtor's Second Amended Chapter 13 Plan (Plan) on the grounds that the Plan was not filed in good faith. At the confirmation hearing neither the Trustee nor the Debtor presented evidence, instead choosing to rely on the facts shown by the schedules and pleadings. The facts are not in dispute.

Prior to filing this Chapter 13 case, the Debtor had filed two Chapter 7 cases, one on November 13, 1990 and the other on September 20, 2011. In both Chapter 7 cases he received a discharge. His current Chapter 13 case was filed on June 6, 2017.

In his current Chapter 13 case, the Debtor scheduled general unsecured debt of $16, 295.77. The Debtor also scheduled a home mortgage debt and a secured car loan. He owns a one-half interest in the home, which he valued at $17, 650.00, and the car is valued at $20,000.00. Because of the mortgage on the home, the lien on the car, and exemptions, the Debtor has no assets that can be used to pay creditors. The Debtor's only sources of income are $1,625.40 per month in Social Security and $735.00 per month in "SSI Net" from his significant other.

The Debtor's Plan proposes to pay his $282.90 monthly home mortgage payment and his $458.79 monthly secured car loan payment directly to those two creditors. The Plan further provides for payments of $100.00 per month to the Trustee for a term of 40 months. From those payments, the Plan proposes to pay the Debtor's attorney $3,000.00, the Trustee's fees, and $550.00 to the Debtor's general unsecured creditors who filed claims, resulting in a 7.4% payment to those

1

creditors. Although the Debtor scheduled $16,295.77 in general unsecured debt, only $9,839.32 in general unsecured claims have been filed and the time to file claims has passed.

> The Trustee filed two objections to the Plan. The first and more significant objection is:
>
> > "The plan was not filed in good faith as a result of the proposal to pay almost exclusively attorney fees through the plan with a nominal distribution to general unsecured creditors."[1]

The Trustee does not contend that the attorney fees are excessive and this Court would note that the $3000.00 fee the attorney is charging is well within the "no look" fee used in the Southern District of Illinois. Nor does the Trustee contend that the Debtor can afford to pay more to the general unsecured creditors or that a low percentage plan should not be confirmed.

This Court is reluctant to start considering the relationship of attorney fees to the amount distributed to general unsecured creditors as a factor in determining good faith. Based on the facts of this case, there are two options available to the Debtor. The first is to reduce the amount of the attorney fees and have the attorney in effect subsidize the Plan. The second is to have the low income Debtor forego filing for bankruptcy protection. Neither is a desirable option. The attorney fees should be examined separately from the distribution to general unsecured creditors. If the attorney fees are reasonable and justified, they should be paid and not used to subsidize payment to general unsecured creditors. Nor should debtors with little or no disposable income be denied access to the Bankruptcy Court because the attorney fees are disproportional to the relief requested.

---

[1] The other objection filed by the Trustee is based on a difference between Form 2030 which shows the attorney fees to be $3,300 and the second amended plan which shows the attorney fees to be $3,000. Subsequently, Form 2030 was amended to show attorney fees of $3,000.00. Thus, there is no longer a basis for this objection.

The cases cited by the Trustee can be divided into basically two groups. The first group consists of cases such as *Matter of Love*, 957 F.2d 1350 (7th Cir. 1992) and *In Re Rimgale*, 669 F.2d 426 (7th Cir.1982). These cases are standard citations in any case involving good faith. They set forth general principles and factors to be considered in determining good faith, recognizing that good faith is a term incapable of a precise definition and is a fact intensive determination left to the discretion of the Bankruptcy Court. *Rimgale*, 669 F.2d at 431. As the Trustee's brief notes, the decided cases direct that the totality of the circumstances must be considered when making a good faith determination. *Matter of Love*, 957 F.2d at 1355. These cases, however, do not address the specific issue before this court.

The second group of cases consists of *In re Rolince*, 2015 WL 1321510 (Bnkr. N.D. Ohio 2015); *In re Platt*, 2012 WL 5842899 (Bnkr. S.D. Indiana 2012); and *In re Paley*, 2008 WL 2331049 (Bnkr. N.D. New York 2008). These cases involved plans which provided for payment of attorney fees with a minimum payment, or no payment, to general unsecured creditors. Those cases found that such plans were not proposed in good faith. However, not all courts addressing this issue have come to the same conclusion. The Court in *In re Banks*, 545 B.R. 241 (Bnkr. N.D. Illinois 2016) held that a Chapter 13 plan which paid attorney fees within the "no look" standard and "0" to unsecured creditors was filed in good faith, as it allowed the debtor to discharge parking tickets and thereby regain his driver's license and have transportation to and from work.

This court disagrees with the rationale in the cases cited by the Trustee that a plan providing for attorney fees with a minimum or no payment to general unsecured creditors results in a finding of bad faith. In this Court's view, attorney fees, which are governed by 11 U.S.C. §

328, should not be intertwined with § 1325(b)(1)'s requirement that debtors pay either 100% of general unsecured claims or all of their disposable income. 11 U.S.C. § 1325(b)(1). Intertwining the two can result in a plan being denied confirmation even though the attorney fees are justified under § 328 and a debtor is paying creditors all that he/she can afford. To obtain confirmation, either the attorney fees must be used to subsidize the payments to general unsecured creditors or a debtor must be denied access to bankruptcy relief. If there is a concern that the bankruptcy filing is solely for the purpose of obtaining fees, that concern should be addressed under § 328.

Even if this Court followed the cases cited by the Trustee, the result would not be the same. As previously noted, good faith is a factual determination and although the issue in those cases and the case before this Court is the same, the facts are somewhat different. In those cases, there is no indication that the attorney fees were adjusted downward or that the debtors were judgment proof. In addition, the general unsecured creditors were being paid "0." Those facts are in contrast to the facts in the case before this Court. Here, the attorney fees have been adjusted downward, the Debtor is judgment proof and is proposing to pay general unsecured creditors who filed claims 7.4%.

Although the Trustee's written objection is limited to the relationship between the attorney's fees being paid and the amount being paid to general unsecured creditors, his brief in support of his objection raises three other factors: (1) The Debtor is judgment proof, so there is no need for a Chapter 13 case; (2) the Debtor has a history of filing for bankruptcy, as evidenced by his prior two chapter 7 cases; and (3) the Debtor could convert his chapter 13 case to a chapter 7 case once the attorney fees are paid and the time limitation for filing another chapter 7 case has passed, in which event the general unsecured creditors would receive "0."

4

While the Debtor may be judgment proof, that does not mean he cannot be sued in state court. It only means that his assets cannot be used to satisfy a judgment(s). He would still have to expend time, effort and expense to protect his exempt assets from being reached in a state court proceeding. Having multiple creditors, he is subject to multiple state court actions. It is more advantageous to protect himself via a single bankruptcy filing.

Turning to the effect of the previous bankruptcy filings by the Debtor, multiple filings, in and of themselves, are not necessarily an indication of bad faith. The Trustee has not presented any evidence to support a finding that the multiple filings, in and of themselves, are in bad faith. The Debtor's previous filings were not serial in nature, where numerous multiple filings are closely related in time, and the previous filings were dismissed for failure to comply with the Bankruptcy Code or Rules, so it could be inferred that the cases were filed merely to stall creditors, and were therefore filed in bad faith. There was a twenty-one year period between the Debtor's first and second bankruptcy filings and a seven year period between his second filing and the Chapter 13 filing currently pending before this Court. There is no evidence that the Debtor did not complete his previous filings or that he is merely filing to stall his creditors.

The last factor argued by the Trustee is that the Debtor will stay in chapter 13 by paying his attorney until he again becomes eligible for chapter 7, at which time he will convert to chapter 7 and thereby pay his creditors nothing. This is a possibility, but it is also possible that he will continue in the chapter 13 and make payments to his creditors. As this Court cannot determine with a high degree of certainty what the Debtor might or might not do, it would not be appropriate for this Court to make a determination of good faith based on speculation.

Two additional points need to be made. First, good faith should be determined based on the benefit to general unsecured creditors, or a lack thereof. The Debtor is judgment proof and general unsecured creditors would get "0" in state court collection actions. In his Chapter 13 case, general unsecured creditors filing claims will receive 7.4%, a benefit to general unsecured creditors.

Second, as previously noted, the Trustee does not argue that the attorney fees are unreasonable. In fact, they are reduced by 33% from the no look fee authorized by the Bankruptcy Court in the Southern District of Illinois. Nor does the Trustee argue that the Debtor is not paying all of his disposable income into the plan or that low percentage plans are not confirmed by the Bankruptcy Court for the Southern District of Illinois. If the Debtor and his attorney are complying with the provisions of the Bankruptcy Code and Rules and holdings of the Bankruptcy Court for the Southern District of Illinois, it is difficult to find bad faith.

For these reasons, the Trustee's Objection to Confirmation should be denied. See order entered this date.

ENTERED: April 26, 2018

/s/ William V. Altenberger
UNITED STATES BANKRUPTCY JUDGE/11